UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SALAH BANASSOU, )<br>   Plaintiff, )<br>v. )<br>CAPITAL GRILLE HOLDINGS, INC. )<br>   Defendant. ) | Civil Action No. 03-12458-RBC |

**JOINT PRE-TRIAL MEMORANDUM**

Plaintiff Salah Banassou ("Banassou") and Defendant Capital Grille Holdings, Inc. ("Capital Grille") submit this Joint Pre-Trial Memorandum in accordance with the Court's February 24, 2005 Order.

**I.   SUMMARY OF THE EVIDENCE**

A.   Plaintiff's Evidence

The plaintiff, Salah Banassou, a Muslim male of Moroccan descent, has alleged that he was subjected to discrimination and retaliation in violation of M.G.L. c. 151B on the basis of his race, national origin and religion while employed at the Capital Grille.

The plaintiff began working as a busboy for The Capital Grille restaurant located on Newbury Street in Boston in approximately May 1999. From approximately September 11, 2001 to the date of his termination in July 2002, the plaintiff was subjected to hostility and racial animus in the workplace. Throughout the course of his employment and particularly during this period of time, the plaintiff was given the hardest and least desirable assignments at the restaurant. This behavior escalated after September 11, 2001, during which time, the plaintiff was asked to perform tasks that Caucasian busboys were not required to do, including, but not

limited to, having to clean vomit from the front hall of the restaurant and having to clean human waste from the mens' room. To the plaintiff's knowledge, no Caucasian busboys were ever asked to perform such tasks.

In addition, in the months after September 11, 2001, unknown employees of The Capital Grille wrapped a watch around a candle to mimic the appearance of a bomb. Plaintiff was singled out and thereafter referred to as Osalah, a reference to Osama Bin Laden, which he took to be offensive. Plaintiff complained about this incident, and to his knowledge, nothing was done about it.

Later that year, in December 2001, the plaintiff was mis-treated during Ramadan by the restaurant's General Manager, Chris Scott, who, in response to plaintiff's request for a meal that was consistent with his religious beliefs, stated: "Go home, this is my house."

In May 2002 and again in June 2002, the plaintiff requested a promotion from busboy to food runner. The plaintiff made this request to the General Manager, Chris Scott, who in reply laughed in the plaintiff's face.

The plaintiff was verbally accosted and abused by the assistant manager, Mike Sally. In June 2002, Mr. Sally brought the plaintiff into an elevator and began yelling at him. Mr. Sally was loud, rude and tried to be physically aggressive. Later that evening, Mr. Sally said that if the plaintiff could not understand him, the plaintiff should look for another job. A few days later, the plaintiff had a meeting with Mike Sally and Derek Childs. By the end of this meeting, the plaintiff was intimidated to the point of asking whether they would terminate him because he was Arab, to which they responded "yes".

A few days later, the plaintiff spoke with Ms. Toni Jones, a member of RARE Hospitality's Human Resources Department in Atlanta, Georgia. The plaintiff described the

abuse and harassment that he had faced while employed at the Capital Grille. Ms. Jones asked the plaintiff to submit a written account of his complaints. The plaintiff complied and submitted a two page account of his complaints to Chris Scott. Mr. Scott denies having received such a document.

After the meeting between the plaintiff and Mr. Sally and Mr. Childs, a member of the wait staff by the name of Bill Grindle, known to be a friend of Mr. Sally's, became hostile towards the plaintiff. Mr. Grindle physically and verbally abused the plaintiff, pushed him, referred to him as a terrorist and told his stay away from his tables, interfering with the plaintiff's ability to do his job. Plaintiff complained about these incidents, and to his knowledge, nothing was done in response to his complaints. In July 2002, the plaintiff submitted a second report chronicling the harassment he faced from Mr. Grindle. Mr. Scott has denied receiving this document as well.

The plaintiff was told that he would be given the opportunity to meet with Ms. Jones. However, either Ms. Jones never came to Boston or the plaintiff was never made aware of her presence in Boston. Either way, the plaintiff was never afforded the opportunity to meet with her. In addition, even though the plaintiff had given Ms. Jones a complete description of his complaints over the phone and provided Mr. Scott with two documents describing his complaints, there is no evidence that any investigation was performed by RARE into the plaintiff's complaints. Within a few days of submitting the second report, the plaintiff was terminated.

The plaintiff claims financial loss and emotional distress as a result of the discrimination, racial animus and retaliation he was subjected to while an employee at the Capital Grille. The

evidence will show that the plaintiff earned substantially less per hour at his subsequent job at Legal Seafood.

    B.    <u>Defendant's Evidence</u>

        *1.*    *Liability*

The Capital Grille hired Banassou as a busboy in 1999, and he remained in that position until his termination in July 2002. For the majority of his time at The Capital Grille, Banassou was an excellent employee. Beginning in the Spring of 2002, however, Banassou's attitude changed. He began refusing requests to perform the routine functions of his job unless asked several times by managers. On many of these occasions, he stated his belief, in general terms, that he was being discriminated against because he is a Moroccan Muslim. He did not, however, provide any details of this alleged discrimination.

The Capital Grille attempted to conduct an investigation into these complaints. Chris Scott, the manager, and Mike Salley, the assistant manager, met with Banassou on numerous occasions and asked him to explain why he felt discriminated against and who was discriminating against him, so that they could investigate and take appropriate action. Unfortunately, Banassou refused to provide The Capital Grille with any information. He simply repeated his general statements that he was discriminated against, and provided no additional details. Meanwhile, Banassou was continuing to give management a hard time about his work assignments, and was repeating his generalized accusations to other employees, some of whom complained to management about the negative atmosphere that Banassou was creating.

Over approximately the next month, Scott spoke repeatedly with Toni Jones, the Human Resources Director for The Capital Grille's parent company, RARE Hospitality International, Inc., about the situation with Banassou. In addition to encouraging Scott to press Banassou for

details about the alleged discrimination, Jones, who was located in Atlanta, suggested that Scott encourage Banassou to write down his complaints since he seemed unwilling to talk about them. Scott asked Banassou to do so, but Banassou never submitted any written statement to Scott, Salley, Jones, or anyone else at The Capital Grille.

Jones also attempted to contact Banassou directly. She left numerous phone messages for him, none of which he returned. She also asked Scott to tell Banassou to call her. Scott passed along the message, but again, Banassou never called. Eventually, Jones was able to speak with Banassou during a conference call with Banassou, Jones, Scott, and Salley, but again, Banassou provided no information about the alleged discrimination. Finally, Jones traveled to Boston from Atlanta and went to The Capital Grille, but still was unable to reach Banassou. She did, however, meet with numerous employees at The Capital Grille, none of whom could shed any light on Banassou's vague claim of discrimination.

The Capital Grille wanted very much to determine whether Banassou's claims were meritorious, and if so to take corrective action. Ultimately, however, it became clear that Banassou would not cooperate in The Capital Grille's investigation. At the same time, Banassou was exhibiting a poor attitude about his own job, was disrupting the workplace, and was creating a morale problem among the staff. The Capital Grille was left with no choice but to terminate Banassou's employment.

Only after Banassou was terminated did he disclose any details of the alleged discrimination. Banassou now claims that he was denied a promotion from busboy to food runner. In fact, however, The Capital Grille offered Banassou a food runner position in the first half of 2002. Banassou began training for the food runner position with Executive Chef David

Cox and Sous Chef Laurence Solitro. Part way through his training, Banassou informed management that he did not want to be a food runner, after all, and only wanted to be a busboy.

Banassou also claims that Chris Scott watched him more closely than non-Moroccan employees and was not as friendly with him. Those allegations simply are not true, and Banassou has offered no evidence of any adverse job consequences or negative treatment by Scott other than this supposed "unfriendliness" – which would not come close to establishing a claim of discrimination even if it were true. Banassou also alleges that Salley assigned him unpleasant tasks such as cleaning bathrooms and moving chairs, but the evidence is undisputed that these were, in fact, jobs that all busboys – regardless of race, religion, or national origin – regularly were asked to perform.

Additionally, Banassou claims that on one occasion, when he was working a double shift during Ramadan, Scott did not provide him with any food after sunset to allow him to break the fast. Again, this allegation is untrue. In fact, while The Capital Grille regularly provided a free (and entirely optional) employee meal, he never ate the meal because he was concerned that it did not comply with Islamic dietary laws. He did not discuss Ramadan with Scott ahead of time, and did not request a meal until the break time on the day in question.

Finally, Banassou claims that a co-worker, Bill Grindle, elbowed him once, called him a "terrorist," and told Banassou to stay away from his table. These allegations are untrue, and even if they were true, they hardly would suffice to constitute discrimination or harassment.

2. *Damages*

Even if The Capital Grille discriminated or retaliated against Banassou – which it did not – his damages are minimal, if any. Banassou got a job as a busbuy at Legal Seafood within two months of his termination from The Capital Grille. Although a busboy's earnings vary from

week to week because of scheduling and changes in the amount of tips, Banassou earns more in a typical week at Legal Seafood than he did at The Capital Grille.

Banassou has minimal evidence of any emotional distress.  He neither sought nor obtained any type of counseling, was not diagnosed with any mental illness, and has not been taking any medication for his alleged emotional distress.  His testimony, if true, amounts to no more than "garden variety" distress that anyone would experience after losing a job.

Finally, Banassou is not seeking punitive damages.

## II.    STIPULATIONS

Banassou and Capital Grille stipulate to the following facts:

1. Banassou's national origin is Moroccan.

2. Banassou's religion is Islam.

3. Capital Grille is an employer within the meaning of Mass. Gen. Laws ch. 151B.

4. Capital Grille owns and operates a restaurant at 359 Newbury Street in Boston, Massachusetts known as The Capital Grille.

5. The Capital Grille hired Banassou as a busboy in 1999.

6. Banassou was employed continuously at The Capital Grille until July 17, 2002, when The Capital Grille terminated his employment.

7. On September 26, 2002, Banassou was hired as a busboy at Legal Seafood in the Prudential Center.

8. Banassou has been employed at Legal Seafood continuously since September 26, 2002.

**III.    FACTUAL ISSUES IN DISPUTE**

1.    Whether The Capital Grille terminated Banassou because of his religion, race, or national origin.

2.    Whether Banassou's complaints of discrimination were sufficiently detailed to constitute protected activity under Mass. Gen. Laws ch. 151B.

3.    Whether Banassou reasonably and in good faith believed that he was the victim of discrimination at The Capital Grille.

4.    Whether The Capital Grille retaliated against Banassou because of his complaints of alleged discrimination.

5.    Whether Banassou provided sufficient notice of the alleged discrimination to The Capital Grille.

6.    Whether and to what extent Banassou has suffered damages.

**IV.    ISSUES OF LAW**

The parties are not presently aware of any unusual issues of law.

**V.    AMENDMENTS TO THE PLEADINGS**

Defendant has filed an assented-to motion to amend the case caption, so that the jury is not aware that at one time there was another plaintiff in this case.  That motion remains pending. Otherwise, the parties do not anticipate any amendments to the pleadings.

**VI.    ADDITIONAL MATTERS  TO AID IN THE DISPOSITION OF THE ACTION**

The parties wish to submit questions for the Court to ask in jury voir dire, but note that the Court's February 24, 2005 order does not make reference to voir dire.  The parties, therefore, request leave to submit proposed voir dire to the Court on or before Friday, July 22, 2005, the

date on which proposed jury instructions and verdict forms are due.  To the extent possible, the parties will attempt to agree on proposed voir dire.

## VII. WITNESSES

### A. Plaintiff's Witnesses

Plaintiff is not calling any expert witnesses.  Plaintiff expects to call the following as fact witnesses (not necessarily in the following order):

1. Salah Banassou;
2. William Stonestreet.

In addition, Plaintiff may call the following as fact witnesses if the need arises:

3. Chris Scott;
4. Toni Jones;[1]
5. Michael Sally;
6. David Cox.

Plaintiff also reserves the right to call any witness identified by Defendant, and to call rebuttal witnesses as necessary.

### B. Defendant's Witnesses

Defendant is not calling any expert witnesses.  Defendant expects to call the following as fact witnesses (not necessarily in the following order):

1. David Cox;
2. Bill Grindle;
3. Toni Jones;[2]
4. Michael Salley;
5. Chris Scott.

In addition, Defendant may call the following as fact witnesses if the need arises:

6. Derek Childs;

---

[1] Plaintiff reserves the right to submit designated portions of Toni Jones's deposition should she fail to appear to testify in person

[2] Defendant anticipates that Toni Jones will testify in person.  However, because she resides in Florida, Defendant will designate portions of her deposition testimony to be used in case Ms. Jones is unable to attend the trial.

7. Chris Guide;
8. Brian Foye;
9. Tom Gathers;
10. Stephanie Gerken;
11. Mark Goldsmith;
12. John Martin;
13. Laurence Solitro.

Defendant also reserves the right to call any witness identified by Plaintiff, and to call rebuttal witnesses as necessary.

## VIII. <u>PROPOSED EXHIBITS</u>

A. <u>Plaintiff's Exhibits</u>

| Exh. No. | Description | Bates No. |
|---|---|---|
| 1. | EDGE Award Commendation | CG 00052 |
| 2. | Memo from Dave Cox & Larry Solitro to Toni Jones | CG 00004 |
| 3. | 2002 Schedules | CG 213-261 (235) |
| 4. | Memo from Chris Scott to Toni Jones | CG 00005 |
| 5. | 1999 Employee Handbook Excerpt, Open Door Policy | CG 00095 |
| 6. | 1999 Employee Handbook Excerpt, Progressive Discipline | CG 100-103 |
| 7. | Employee Grievance Form | CG 90-91 |
| 8. | Food Runner Description and Training | CG 00352-366 |
| 9. | Report of Work Discrimination | |
| 10. | Report of Bill Grindle | |
| 11. | W2 Forms 1999-2004 | |
| 12. | Pay Stub, Pay Date 7/12/2002 | |
| 13. | Pay Stub, Pay Date 7/19/2002 | |

| | | |
|---|---|---|
| 14. | Pay Stub, Pay Date 7/26/2002 | |
| 15. | Pay Stub, Pay Date 3/5/2004 | |
| 16. | Pay Stub, Pay Date 4/2/2004 | |

B.  Defendant's Exhibits

Defendant expects to introduce the following exhibits at trial:

| Exh. No. | Description | Bates No. |
|---|---|---|
| A. | Banassou's Acknowledgment of Handbook | CG 50 |
| B. | 1998 Employee Handbook (excerpts) | CG 317; 319; 325; 328-29; 332-33 |
| C. | 1999 Employee Handbook (excerpts) | CG 298; 302; 304; 00306-309 |
| D. | 2002 Employee Handbook (excerpts) | CG 262; 268; 272; 282; 284-85; 288-290 |
| E. | Capital Grille Operations Manual (excerpts) | CG 423-24; 428-32; 435-38; 442 |
| F. | Open Door Policy Poster | |
| G. | Busser Job Description | CG 342 |
| H. | 11/18/02 Memo from Mike Salley to Chris Scott | CG 53-54[3] |

Defendant reserves the right to introduce additional exhibits for rebuttal purposes and to use additional documents for impeachment purposes.

---

[3]  Defendant offers this exhibit conditionally, in the event that Mike Salley is unable to testify.

IX.  **TRIAL COUNSEL**

For Plaintiff:

Edwin Barrett
Rainer, Walsh & O'Connor, LLP
60 Veterans of Foreign Wars Parkway
Revere, MA 02151
(781) 289-7900
FAX:  (781) 485-0624

For Defendant:

Brian H. Lamkin
Mark B. Dubnoff
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444
FAX:  (617) 439-4170

| | |
|---|---|
| SALAH BANASSOU,<br>By his attorney, | CAPITAL GRILLE HOLDINGS, INC.,<br>By its attorney, |
| /s/ Edwin Barrett<br>Edwin Barrett (BBO No. 643230)<br>RAINER, WALSH & O'CONNOR, LLP<br>60 V.F.W. Parkway<br>Revere, MA 02151<br>(781) 289-7900<br>(781) 485-0624 (fax) | /s/ Brian H. Lamkin<br>Brian H. Lamkin (BBO No. 635688)<br>EDWARDS & ANGELL, LLP<br>101 Federal Street<br>Boston, MA  02110<br>(617) 439-4444<br>(617) 439-4170 (fax) |